1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2021

SEAN F. McAVOY, CLERK

3

4

5           UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON

6

7   BRANDON W.,[1]                    No.    4:20-CV-5073-EFS

8                    Plaintiff,

9         v.                          **ORDER DENYING PLAINTIFF'S
                                      SUMMARY-JUDGMENT MOTION
10  ANDREW M. SAUL, the Commissioner  AND GRANTING DEFENDANT'S
    of Social Security,               SUMMARY-JUDGMENT MOTION**

11

12                   Defendant.

13

14        Before the Court are the parties' cross summary-judgment motions.[2]

15  Plaintiff Brandon W. appeals the denial of benefits by the Administrative Law

16  Judge (ALJ). He alleges the ALJ erred by 1) discounting his symptom reports, 2)

17  failing to properly consider lay statements, 3) improperly weighing the a medical

18  opinion, 4) improperly determining that his impairments did not meet or equal a

19

20  _____

    [1] To protect the privacy of the social-security Plaintiff, the Court refers to him by

21  first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

22  [2] ECF Nos. 16 & 17.

23

    ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

listing, and 5) improperly assessing his residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 16, and grants the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.  Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id*. §§ 404.1520(b), 416.920(b).

[6] *Id*. §§ 404.1520(b), 416.920(b).

1

2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are

denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

3

4

5

6

7

Step three compares the claimant's impairment(s) to several recognized by

the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an

impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.[11] If an impairment does not, the disability-

evaluation proceeds to step four.

8

9

10

11

12

Step four assesses whether an impairment prevents the claimant from

performing work he performed in the past by determining the claimant's residual

functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits

are denied.[13] If the claimant cannot perform prior work, the disability-evaluation

proceeds to step five.

13

14

15

Step five, the final step, assesses whether the claimant can perform other

substantial gainful work—work that exists in significant numbers in the national

16

17

18

19

20

21

22

23

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14]
If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability
benefits under steps one through four.[16] At step five, the burden shifts to the
Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of
March 30, 2016.[18] His claims were denied initially and upon reconsideration.[19] A
video administrative hearing was held before Administrative Law Judge Carol
Moore.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff met the insured status requirements through March 31,
  2017;

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496,
1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 228-32 & 236-42.

[19] AR 135-52 & 155-66.

[20] AR 46-86.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- Step one: Plaintiff had not engaged in substantial gainful activity since the alleged March 30, 2016 onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: grade-1 retrolisthesis L4-5 and sleep disorders diagnosed as insomnia, hypersomnia, and narcolepsy;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

  - He should never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs;

  - He should never crawl, but he can occasionally balance, stoop, kneel, and crouch;

  - He should not have exposure to hazards such as moving machinery and unprotected heights;

  - His work should not include driving;

  - He can tolerate frequent exposure to extreme cold and vibration; and

  - Consistent with light exertion, he can lift/carry 20-pounds occasionally and 10-pounds frequently and he can sit 6-hours and stand/walk 2-hours during an 8-hour workday; however,

after an hour of sitting, standing, or walking, he should

change positions;

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as office helper, parking lot attendant, and mail clerk.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- significant weight to the testifying medical opinion of Samuel Berman, M.D.; the examining opinion of Lynn Orr, Ph.D., and the reviewing opinions of Donna Lavallie, D.O., John Robinson, Ph.D., and Dan Donahue, Ph.D.; and

- less weight to the opinion of Jason England, ARNP.[22]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were

---

[21] AR 24-45.

[22] AR 35-37.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the lay statements from Plaintiff's wife.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[23] AR 32-38.

[24] AR 37.

[25] AR 1-6.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

### A.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must

---

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[34] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[35] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical evidence and his activities. The ALJ also discounted Plaintiff's symptom reports because he appeared to be motivated to seek disability for non-disability purposes based on his inconsistent statements, apparent lack of effort during the psychological examination, sporadic work history, failure to follow medical advice, and use of marijuana.[36]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[37] However, objective medical evidence is a relevant factor in

---

[34] *Molina*, 674 F.3d at 1112.

[35] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[36] AR 32-38.

[37] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

considering the severity of the reported symptoms.[38] "Objective medical evidence" means signs, laboratory findings, or both.[39] In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.[40]

Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[41]

Here, although x-rays revealed age indeterminate grade-1 retrolisthesis of L4 on L5, Plaintiff regularly had normal muscle strength, intact coordination, and gait.[42] And as the ALJ highlighted, treating physician Jonathan Salahshour, M.D. declined to prepare a letter that Plaintiff was unable to work because Plaintiff's

---

[38] *Id.*

[39] 20 C.F.R. §§ 404.1502(f), 416.902(k).

[40] *Id.* §§ 404.1502(g), 416.902(l).

[41] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[42] AR 338-39, 354-60, 375, 378, 380, 403, 406, 439, 443, & 454.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

pain level was significantly reduced from his last visit.[43] In addition, Plaintiff routinely appeared orientated, in no distress, and with normal mood/affect, memory and ability to concentrate.[44] During his psychological examination with Dr. Lynn Orr, Plaintiff's remote memory was reasonably good, he had no problem with his concentration or fund of knowledge, and while his recent and immediate memory showed impairment, Dr. Orr questioned whether Plaintiff gave his best effort on the Wechsler Memory Scale test as his results indicated a high probability of malingering.[45] Dr. Lynn concluded "there is nothing significant[ly] evident that would impair [Plaintiff's] ability to maintain sustained concentration and persistence and make adequate adaptations."[46] There is substantial evidence to support the ALJ's finding that Plaintiff's reported disabling physical and mental symptoms were inconsistent with the objective medical record. This was a relevant factor for the ALJ to consider when assessing Plaintiff's symptom reports.

Second, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with his activities. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported

---

[43] AR 373.

[44] AR 338-39, 354, 391, 395, 399, & 406.

[45] AR 364-66.

[46] AR 367.

disabling symptoms.[47] The ALJ highlighted that Plaintiff completed some college accounting classes, takes care of his special-needs young children while his wife works during the day (including feeding the children, putting them down for naps, taking them to the park, and watching movies with them), travels monthly to Seattle and every three months to Boston for children's doctors' appointments, manages finances, performs personal care, cooks, shops, watches television, uses a computer, attends church, and socializes with family and friends.[48] While several of these activities could be done spaced out throughout the day or week and thereby allow Plaintiff to rest, the Court finds the ALJ's finding—that Plaintiff's activities are inconsistent with his reported symptoms of chronic fatigue and pain resulting in the inability to sustain work—as rational and supported by substantial evidence. Based on Plaintiff's reports to medical providers and Dr. Orr, Plaintiff cooks meals from scratch a good deal of the time, cares for (without the need to take a nap) his two children, and attends social or church activities at least six times a month.[49] Similarly, although Plaintiff advised the medical providers treating his sleeping difficulties that he was tired, he relayed that he did not nap during the day.[50] On this record, the ALJ rationally found Plaintiff's activities were

---

[47] *Molina*, 674 F.3d at 1113.

[48] AR 30-38.

[49] AR 363-68.

[50] AR 390, 394, & 398.

inconsistent with his disabling complaints. This finding was sufficiently articulated by the ALJ considering the record and constitutes a clear and convincing reason to discount Plaintiff's symptoms.

Third, the ALJ discounted Plaintiff's symptom reports because Plaintiff appeared to be motivated by non-disability purposes. The ALJ based this finding, in part, on Plaintiff's inconsistent statements (including about his symptoms and level of activity), failure to give full effort during his psychological examination with Dr. Orr, and sporadic work history. An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements and a tendency to exaggerate or engage in conduct to manipulate the disability-determination process.[51] Here, the ALJ highlighted that contrary to Plaintiff's complaints during the disability process of disabling back pain and chronic daytime fatigue, Plaintiff did not report such work-restrictive symptoms to his medical providers.[52] Plaintiff reported some physical back pain to his medical providers but did not report that it prohibited him from engaging in daily activities or work.[53] Plaintiff told those

---

[51] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

[52] AR 35-36 (citing AR 389-95 & 404-27).

[53] *See, e.g.*, AR 355, 376-77, 379-81, 452-53.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

treating his sleeping disorders that although he was tired and that his ability to

perform daily functions at home was impaired due to concentration and memory

difficulties, he did not take daytime naps and that within six months of treatment

his sleep improved.[54] The ALJ rationally interpreted Plaintiff as offering

inconsistent symptom reports to his treatment providers as compared to those he

made during the disability process. In addition, the ALJ rationally found that

Plaintiff offered varying accounts as to the extent and scope of his daily activities

and functional limitations.[55] The ALJ also rationally relied on Dr. Orr's finding

that Plaintiff did not appear to give his best effort on the psychological testing and

appeared to be malingering.[56] In addition, the ALJ rationally highlighted that

---

12

13

14

15

16

17

18

19

20

21

22

23

[54] AR 389-406. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (considering evidence of improvement). *See also* AR 353 & 450 (noting no sleep disturbance).

[55] *Compare* AR 71 (telling SSA that his wife handles most of the food preparation and that his wife stands in the bathroom while he baths in case he falls asleep) *with* AR 366 (telling Dr. Orr that he cooks a good deal of the time, makes meals from scratch, and is able to perform self-care without assistance).

[56] AR 366-67. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (recognizing that an ALJ may discount a claimant's reported symptoms if the claimant was observed by an evaluator as not exerting adequate effort during testing).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff had a sporadic work history and told Dr. Orr that he had a history of being in/out of jail and then, a mere three days after his evaluation with Dr. Orr, a treatment note reflects that Plaintiff was likely to get jail time and was requesting a letter stating that he was unable to work due to pain—a letter which was not approved by the treating physician.[57] The ALJ's decision to discount Plaintiff's reported disability symptoms because his decision to seek disability appeared to be motivated for non-disability reasons is supported by substantial evidence and is a clear and convincing reason to discount Plaintiff's reported disability symptoms.

The ALJ also questioned Plaintiff's motivation for seeking disability because he continued to smoke cigarettes contrary to medical advice, he declined to take medication for anxiety or participate in counseling, and he continued to smoke marijuana and offered inconsistent statements as to his marijuana use. The ALJ erred in these regards. There is no medical evidence that Plaintiff's continued smoking of cigarettes caused or exacerbated his back or sleeping impairments. And the record reflects that Plaintiff declined to take the discussed medications as

---

[57] AR 37 (citing AR 364 & 373 ("Patient called stating he has court on 9/19/16 and could possibly due jail time, he is wanting to know if we can write a letter stating he is unable to work at this time due to his pain.")). *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529 (work record can be considered in assessing reported symptoms); 20 C.F.R. § 416.929 (same).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff reported a poor response to such medications previously.[58] In addition, the ALJ's decision to discount Plaintiff's credibility because he declined to engage in counseling is not supported by substantial evidence on this record because the same treatment note indicated that the medical provider believed that Plaintiff's anxiety may be related to chronic illness or a genetic disorder rather than to a mental health condition for which counseling would assist.[59] Finally, the ALJ's finding that Plaintiff offered inconsistent statements about his marijuana use during the period at issue is supported by substantial evidence, however, it is not a clear and convincing reason to discount his credibility on this record. No treatment note indicated that Plaintiff's marijuana use—which is legal in Washington—caused or exacerbated his impairments. Without further articulation and findings by the ALJ, that Plaintiff offered varying reports about his marijuana use is not a clear and convincing reason to discount the reliability of his testimony. Nonetheless, these errors are harmless because the ALJ offered other clear and convincing reasons supported by substantial evidence for discounting Plaintiff's reported symptoms.[60]

---

[58] *See* SSR 18-3p; *see also* POMS DI 23010.009 ("Prescribed treatment does not include lifestyle modifications, such as dieting, exercise, or smoking cessation.").

[59] AR 457.

[60] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's

1

2

In summary, Plaintiff fails to establish the ALJ consequentially erred.

**B.      Lay Witness: Plaintiff fails to establish error.**

3

4

5

6

7

8

9

10

The ALJ discounted Plaintiff's wife's statements about Plaintiff's fatigue and associated memory and attention difficulties because they were inconsistent with Plaintiff's activities and functioning.[61] "Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[62] Here, the ALJ rationally discounted the wife's statements for the same reasons the ALJ discounted Plaintiff's similar symptom statements.[63] Plaintiff fails to establish err by the ALJ.

11

12

13

_____

14

15

16

17

18

19

20

error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

[61] AR 37 (citing AR 333-34).

21

22

[62] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[63] *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

23

1

2

**C.    Medical Opinions: Plaintiff fails to establish consequential error.**

3        Plaintiff challenges the ALJ's assignment of little weight to the treating

4    opinion of Jason England, ARNP. As discussed below, the Court finds the ALJ's

5    weighing of Nurse England's opinion was supported by substantial evidence.

6        1.    <u>Standard</u>

7        The weighing of medical opinions is dependent upon the nature of the

8    medical relationship, i.e., 1) a treating physician, 2) an examining physician who

9    examines but did not treat the claimant, and 3) a reviewing physician who neither

10   treated nor examined the claimant.[64] Generally, more weight is given to the

11   opinion of a treating physician than to an examining physician's opinion and both

12   treating and examining opinions are to be given more weight than the opinion of a

13   reviewing physician.[65]

14       When a treating physician's or evaluating physician's opinion is not

15   contradicted by another physician, it may be rejected only for "clear and

16   convincing" reasons, and when it is contradicted, it may be rejected for "specific

17   and legitimate reasons" supported by substantial evidence.[66] A reviewing

18   physician's opinion may be rejected for specific and legitimate reasons supported by

19

20   ────────────

[64] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

21

[65] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

22

[66] *Lester*, 81 F.3d at 830.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

substantial evidence, and the opinion of an "other" medical source[67] may be rejected for specific and germane reasons supported by substantial evidence.[68] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[69]

### 2.   Nurse England

Nurse England treated Plaintiff, and on August 2, 2018, provided a medical opinion.[70] Nurse England noted that the sleep specialist had diagnosed Plaintiff with insomnia, hypertension, and narcolepsy, and stated that Plaintiff "feels he would have to miss [2-3 days of work a month] with his sleep disturbance/narcolepsy history" and that Plaintiff would be off-task 21-30 percent of the work week.[71]

---

[67] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[68] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[69] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[70] AR 337-39, 353-54, 447-51, 465-66, & 469.

[71] AR 465-66.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ discounted Nurse England's opined limitations because 1) he relied too heavily on Plaintiff's subjective reports about the days he would be absent from work, 2) the limitations were speculative, 3) the off-task limitation was inconsistent with Plaintiff's activities, and 4) Plaintiff refused to take medication for a mental disorder or participate in counseling.[72]

First, the ALJ's finding that Nurse England's limitation that Plaintiff would be absent 2-3 days a month was too reliant on Plaintiff's subjective reports, rather than medical observations or findings, is a rational finding supported by substantial evidence. A medical opinion may be discounted if it is inadequately supported by medical findings and observations.[73] Here, notwithstanding that Nurse England reviewed the sleep study identifying that Plaintiff had limited stage 3 sleep and other sleep difficulties, Nurse England expressly stated that his absenteeism limitation was based on Plaintiff's self-reported anticipated absences: "[Patient] *feels* he would have to miss [2-3 days] of work a month with his sleep disturbance/narcolepsy history."[74] Moreover, the ALJ rationally found there is nothing in Nurse England's own or reviewed treatment records that would support

---

[72] AR 36.

[73] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1014.

[74] AR 466 (emphasis added).

absenteeism at this opined rate.[75] Plaintiff relies on Sophie Gomez, M.D.'s treatment note that Plaintiff's hypersomnia was affecting daytime functioning,[76] but the ALJ rationally found that the record lacked sufficient objective medical findings indicating that Plaintiff's sleep difficulties severely impacted his daytime concentration, social skills, reasoning, and other functioning.[77] That Nurse England's absenteeism opinion was too heavily based on Plaintiff's reported daytime fatigue symptoms and anticipated absences, rather than objective medical evidence, was a legitimate[78] reason, supported by substantial evidence, to discount Nurse England's opinion.

---

[75] *See, e.g.*, AR 337, 353-54, 429-433, 447-51, & 469.

[76] AR 406.

[77] AR 338-39, 354, 391, 395, 399, & 406 (noting that Plaintiff appeared orientated, in no distress, and with normal concentration and memory); AR 364-67 (finding that Plaintiff had the ability to maintain sustained concentration, persistence, and make adequate adaptations).

[78] The Commissioner submits the germane standard applies to Nurse England's opinion as an ARNP. The Court is unsure whether Nurse England is a licensed ARNP and whether he was offering care within his licensed area. Therefore, the Court applies the higher legitimate standard, rather than the germane standard, in an abundance of caution.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ discounted Nurse England's absenteeism and attendance limitations because they were speculative. A medical opinion may be given less weight if it is speculative and not based on objective medical findings.[79] Here, Nurse England's opined limitations were premised with clauses such as "[Patient] feels" or "[Patient] states" and his treatment notes did not include any observed tiredness that impacted concentration or memory.[80] The ALJ rationally found that Nurse England's absenteeism and attendance limitations were speculative. This was a legitimate reason supported by substantial evidence to give less weight to Nurse England's opinions.

Third, the ALJ discounted Nurse England's off-task limitation because it was inconsistent with Plaintiff's activities, including caring for his two young children. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity.[81] But "many home activities are not easily transferable to what may be the more grueling environment of the workplace."[82] As discussed above, Plaintiff's activities involved caring for his two young children without the need to take naps. The ALJ rationally found that Plaintiff reported activities to Dr.

---

[79] *See Coaty v. Colvin*, 673 Fed. Appx. 787, 788 (9th Cir. 2017) (affirming ALJ's determination that medical opinion was speculative).

[80] AR 465-66.

[81] *Rollins*, 261 F.3d at 856.

[82] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 22

Orr that were inconsistent with Nurse England's off-task limitation. Moreover, even if the ALJ erred by discounting Nurse England's opinion on the grounds that it was inconsistent with Plaintiff's activities, any error was harmless because the ALJ offered two other supported reasons for discounting Nurse England's opinion.[83]

Finally, the ALJ discounted Nurse England's opinions because Plaintiff refused to take medication for a mental disorder or participate in counseling. As discussed above, these were not legitimate reasons supported by substantial evidence to discount Nurse England's opinions. First, because during the same appointment that the treating provider recommended counseling, the treating provider also mentioned that Plaintiff's anxiety may be due to chronic back pain or a genetic condition. Second, Plaintiff declined certain medications because he previously had a poor response to the medications.[84] The ALJ's errors were inconsequential though to the ALJ's overall weighing of Nurse England's opinion.

**D.     Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by failing to consider Listing 11.02 for Plaintiff's sleep impairments of insomnia, hypersomnia, and narcolepsy and by providing nothing more than a boilerplate listing denial.

---

[83] *See Carmickle*, 533 F.3d at 1162 (requiring the error to be consequential to the disability analysis).

[84] AR 457.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[85] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[86] However, the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[87] Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[88]

The ALJ's listings' finding was boilerplate: "The medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."[89] However, no step-three error occurred. The ALJ offered

---

[85] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

[86] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

[87] *Lewis,* 236 F.3d at 513.

[88] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

[89] AR 31.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 24

1

2

sufficient analysis in later portions of the decision and the underlying record contains sufficient evidence to support her findings.[90]

3

4

5

6

7

8

9

10

11

12

Moreover, Plaintiff fails to present sufficient evidence as to Listing 11.02, under which Plaintiff's sleep disorders are evaluated.[91] Plaintiff did not identify what 11.02 criteria he has satisfied. Although Plaintiff's polysomnography sleep study showed that he has limited stage 3 and REM sleep, the medical record is largely devoid of any observed fatigue and resulting memory or concentration difficulties.[92] And Dr. Orr found that Plaintiff "demonstrated good remote memory, good fund of knowledge, good concentration[,] good abstract thinking and reasonably good insight and judgment."[93] Finally, no medical expert opined that Plaintiff met the requirements of Listing 11.02. The Court finds no reason to disturb the ALJ's step-three finding.

13

**E.    RFC: Plaintiff fails to establish error.**

14

15

16

17

Plaintiff argues the ALJ failed to properly include all of his limitations into the RFC, including his need to be absent two to three days per month, the need for extra breaks totaling two to three hours per day, and the need to be off task ten

18

19

20

[90] *Molina*, 674 F.3d at 1112; SSR 17-2p.

[91] POMS DI 24580.005C, *Evaluation of Narcolepsy*,

https://secure.ssa.gov/apps10/poms.nsf/lnx/0424580005.

21

22

[92] *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02.

[93] AR 367.

23

percent or more of the time. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[94] Plaintiff's RFC-argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. The RFC properly accounted for the limitations supported by the record.[95]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 24th day of March 2020.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[94] *Rounds v. Comm'r of Soc. Sec. Adm.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[95] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 26